NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

K.H., on behalf of minor child, B.Y.,  :
                                   :     Civ. No. 05-4925 (AET)
           Plaintiff,  :
                                    :     **MEMORANDUM OPINION**
              v.  :
                                    :
NORTH HUNTERDON-VOORHEES  :
REGIONAL HIGH SCHOOL  :
HUNTERDON CO., NEW JERSEY,  :
                                    :
          Defendant.  :

_____:

THOMPSON, U.S.D.J

I.     Introduction

This matter is before the Court on the parties' cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56(c).  The Court has jurisdiction over this matter under 20 U.S.C. § 1415(i)(2).  The Court has made its determination after considering the written submissions of the parties, and without oral argument pursuant to Fed. R. Civ. P. 78.  For the reasons set forth below, both motions are granted in part and denied in part.

II.    Background

This case arises under the Individuals with Disabilities Education Act ("IDEA"), and raises the issue of whether Defendant North Hunterdon-Voorhees Regional High School District Board of Education ("North Hunterdon" or "Defendant") should be required to reimburse Plaintiff K.H. for the unilateral placement of her daughter B.Y. in private school for part of the 2003-2004 school year and the entire 2004-2005 school year.

A.    Individuals with Disabilities Education Act

Under the IDEA, Congress granted federal funding to the states for special education programs, contingent on the states providing a "free appropriate public education" ("FAPE") to disabled children. 20 U.S.C. § 1400(d)(1)(A). FAPE is defined as

> special education and related services that -- (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with [an] individualized education program . . . .

20 U.S.C. § 1401(9). In Rowley, the Supreme Court held that a state satisfied the FAPE requirement when that state provided "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." Bd. of Educ. v. Rowley, 458 U.S. 176, 203 (1982). The state must offer access to education that is "meaningful," Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999), but does not need to offer education that "maximize[s] each child's potential," Rowley, 458 U.S. at 198. The IDEA also requires that children with disabilities be educated in the "least restrictive environment" ("LRE"). 20 U.S.C. § 1412(a)(5). This requirement establishes a strong preference for mainstreaming disabled children by educating them with non-disabled children to the maximum extent possible. See id.

At its core, the IDEA requires that an Individualized Education Program ("IEP") be designed for each disabled child. 20 U.S.C. § 1414(d); S.H. v. State-Operated Sch. Dist., 336 F.3d 260, 264 (3d Cir. 2003). The IEP sets forth the goals and objectives which will be used to determine whether the child is receiving a FAPE. 20 U.S.C. § 1414(d); S.H., 336 F.3d at 264. The IEP is developed by a team composed of the child's parents, the child's regular and special

education teachers, a curriculum specialist from the school district, and in addition, if requested by the parents or the school, anyone with special knowledge or expertise related to the child's education.  20 U.S.C. § 1414(d)(1)(B); S.H., 336 F.3d at 264.  In New Jersey, the IEP is developed by a school district's Child Study Team ("CST"), composed of a school psychologist, a learning disabilities teacher-consultant, and a school social worker, along with the child's parents, a teacher familiar with the child, and other appropriate school personnel.  N.J. Admin. Code § 6A:14-2.3(i); S.H., 336 F.3d at 264-65.  The IEP is reviewed at least annually to determine whether the child is reaching the stated goals, and is revised as necessary.  20 U.S.C. § 1414(d)(4); S.H., 336 F.3d at 265.

Parents who unilaterally withdraw their child from public school and place him or her in private school without consent from the school district "do so at their own financial risk."  Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 374 (1985).  They may be entitled to reimbursement for tuition costs for their unilateral private placement only if a court finds that the proposed IEP was inappropriate and the private placement was appropriate under the IDEA.  20 U.S.C. §1412(a)(10)(C)(ii); N.J. Admin. Code § 6A:14-2.10(b); Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993).  A court may reduce or deny reimbursement costs based on the parents' unreasonable behavior during the IEP process.  20 U.S.C. § 1412(a)(10)(C)(iii); N.J. Admin. Code § 6A:14-2.10(c); see B.G. v. Cranford Bd. of Educ., 702 F. Supp. 1158, 1166 (D.N.J. 1988).

In New Jersey, parents who disagree with a school district's proposed IEP may challenge the IEP in a due process hearing, which is adjudicated by an Administrative Law Judge ("ALJ").  N.J. Admin. Code § 6A:14-2.7; Lascari v. Bd. of Educ., 116 N.J. 30, 37 (1989).  The ALJ's final

decision may then be appealed by any aggrieved party through a civil action filed in state or federal court.  20 U.S.C. § 1415(i)(2).

      B.      <u>Relevant Case History</u>

B.Y. is a seventeen year old girl who has been classified as eligible for special education and related services under the "specific learning disability" category.  While a third grader at a school in Germany, B.Y. was diagnosed with dyslexia.  After this diagnosis, she attended a boarding school in England to address her dyslexia.  When B.Y.'s family moved to Clinton Township, New Jersey in 2000, B.Y. was enrolled in sixth grade at Round Valley Middle School, which is operated by the Clinton Township Board of Education.  B.Y. was found eligible for special education and related services in November 2000, and received special education services for part of sixth grade until eighth grade.  Plaintiff K.H., B.Y.'s mother, and T.H., B.Y.'s father, were both dissatisfied with the services offered under B.Y.'s IEP.

After completion of eighth grade at Round Valley Middle School, students residing in Clinton Township automatically go on to attend high school at North Hunterdon High School.  Defendant North Hunterdon, which is a separate entity from the Clinton Township Board of Education, operates North Hunterdon High School.  To prepare for B.Y.'s transition to high school after her eighth grade year, Defendant's CST held meetings with Plaintiff and T.H. in January 2003, February 2003, May 2003, and July 2003.  Plaintiff and T.H. chose not to accept the proposed IEP issued on July 9, 2003.  Instead, Plaintiff and her family relocated to their summer home at Point Pleasant Beach, and B.Y. was enrolled in ninth grade at Point Pleasant Beach High School.

On November 25, 2003, T.H. notified the Point Pleasant Beach High School District that

-4-

he and Plaintiff believed that B.Y.'s needs were not being met, and that B.Y. would be attending the Craig School in Mountain Lakes, New Jersey, for the remainder of the 2003-2004 school year.  On February 25, 2004, Plaintiff and T.H. enrolled B.Y. in North Hunterdon High School. Defendant scheduled a meeting for March 25, 2004 to discuss B.Y.'s IEP and transition to the high school.  The meeting was rescheduled for April 2, 2004 at Plaintiff and T.H.'s request.  At that meeting, Defendant agreed to conduct various assessments on B.Y. to aid in developing an IEP.  Defendant's CST issued a draft IEP on June 23, 2004, which offered in-class support for B.Y.'s classes in World History, English II, Chemistry, and Geometry, as well as pull-out Study Skills and Reading in the Resource Center.  (Certification of Paul N. Barger, Ex. H at 17-18, 22 [hereinafter Barger Certification].)  Plaintiff and T.H. requested some time to think over the draft IEP, and said that their attorney, Ms. Harriet Gordon, would contact Defendant to schedule another meeting to complete the IEP process.

On July 21, 2004, Ms. Gordon notified Defendant that her clients rejected the proposed IEP and would file a due process petition.  Defendant responded by letter to Ms. Gordon on July 23, 2004, and indicated that it would proceed with the IEP process.  Defendant scheduled the final IEP meeting for August 30, 2004, and notified Ms. Gordon and her clients of this meeting on August 20, 2004.  On the day of the meeting, Ms. Gordon wrote a letter informing Defendant that her clients rejected the proposed IEP and had selected another school for B.Y. to attend. Although the chosen school was not named in this letter, other letters from Ms. Gordon, dated August 30, 2004 and February 24, 2005, indicate that B.Y. was enrolled at the Kildonan School in New York State for the 2004-2005 school year.  (Pl.'s Br. in Reply, Exs. C & D.)  In August 2005, Plaintiff and T.H. relocated their family to the State of Michigan, where presumably B.Y.

is now being educated.  (Pl.'s Br. in Supp., Aff. of K.H. ¶ 2.)

Plaintiff filed her petition for a due process hearing with the New Jersey Department of Education, Office of Special Education Programs on October 15, 2004.  The petition demanded that Defendant provide B.Y. with services similar to those offered at the Kildonan School and the Craig School, made applications for placement at both schools under the Naples Act, N.J. Stat. Ann. § 18A:46-14, and sought reimbursement for tuition and expenses related to Plaintiff's placement of B.Y. at the Kildonan School.  The Commissioner of Education transmitted the request to the Office of Administrative Law on December 21, 2004.  The hearing began on January 26, 2005 and was continued until June 2005.  However, in May 2005, Defendant was granted an adjournment so that it could file a motion for summary decision that, if granted, would dispose of the matter.  Defendant submitted its motion on June 2, 2005. The ALJ granted Defendant's motion in his July 15, 2005 decision and denied Plaintiff's petition.

Plaintiff, on behalf of B.Y., filed this action on October 11, 2005 to appeal the ALJ's decision.  The parties subsequently filed their cross-motions for summary judgment on March 24, 2006.  These motions raise the issues of (1) whether the ALJ properly interpreted N.J. Admin. Code § 6A:14-2.10(b) when he denied Plaintiff's petition and (2) whether the ALJ correctly determined that Plaintiff and T.H. behaved unreasonably in such a manner as to bar reimbursement under N.J. Admin. Code § 6A:14-2.10(c).

III.    Review of an ALJ's Decision Under the Individuals with Disabilities Education Act

A.    Standard of Review

In a case brought to appeal an ALJ's decision under the IDEA, the district court applies a "modified version of de novo review."  L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 (3d Cir.

-6-

2006).  The district court "must make its own findings by a preponderance of evidence . . . and must also afford 'due weight' to the ALJ's determination."  Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 198-99 (3d Cir. 2004) (quoting Rowley, 458 U.S. at 206) (citations omitted); see also 20 U.S.C. § 1415(i)(2)(C) ("[T]he [district] court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.").  Although the court gives due weight to the ALJ's factual findings, the court reviews the ALJ's legal determinations de novo.  Muller v. Comm. on Special Educ., 145 F.3d 95, 102 (2d Cir. 1998).  The burden of proof in a proceeding to challenge an IEP is placed on the party seeking relief.  Ramsey, 435 F.3d at 391-92.

     B.    Analysis

     Where no new evidence has been presented to the Court, motions for summary judgment in an IDEA case are the procedural vehicle for asking the judge to decide the case based on the administrative record.  M.A. v. Voorhees Twp. Bd. of Educ., 202 F. Supp. 2d 345, 359 (D.N.J. 2002) (quoting Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997)).

     1.    N.J. Admin. Code § 6A:14-2.10(b)

     The Court will apply de novo review to the ALJ's interpretation of N.J. Admin. Code § 6A:14-2.10(b).  Under the regulation, certain prerequisites must be fulfilled before an ALJ can require a school district to reimburse parents for the unilateral placement of their child in private school.  Namely,

> [i]f the parents of a student with a disability, who previously received special education and related services from the district of residence, enroll the student in a nonpublic school, . . . or approved

-7-

> private school for the disabled without the consent of or referral by
> the district board of education, an [ALJ] may require the district to
> reimburse the parents for the cost of that enrollment if the [ALJ]
> finds that the district had not made a free, appropriate public
> education available to that student in a timely manner prior to that
> enrollment and that the private placement is appropriate.

N.J. Admin. Code § 6A:14-2.10(b) (emphasis added).

   Based on the regulation, the ALJ concluded that B.Y. could not qualify for

reimbursement because there was no evidence to show that she ever received special education

and related services from Defendant, although B.Y. did receive such services when she attended

Round Valley Middle School.  The ALJ relied primarily on the Gilbert F. and Somerset Hills

cases to support his decision.  Both of these cases, however, are distinguishable from the case at

hand because they involved students who did not receive special education or related services

from any school district.  Bd. of Educ. v. Tom F. ex rel. Gilbert F., No. 01 Civ. 6845, 2005 U.S.

Dist. LEXIS 49, at *1 (S.D.N.Y. Jan. 4, 2005); B.G. v. Somerset Hills Reg'l Bd. of Educ., OAL

Dkt. No. EDS 21-05, Agency Dkt. Nos. 2005-9586, 2005 N.J. AGEN LEXIS 147, at *2-5 (N.J.

Office of Admin. Law, Mar. 17, 2005).  The cases cited by Defendant can be similarly

distinguished.  See, e.g., T.H. v. Clinton Twp., Civ. No. 05-3709, 2006 U.S. Dist. LEXIS 40358

(D.N.J. June 16, 2006).

   The regulation requires the student to have "previously received special education and

related services from the district of residence."  N.J. Admin. Code § 6A:14-2.10(b) (emphasis

added).  Thus, applying a plain language reading of the regulation, B.Y. has fulfilled the

"previously received" requirement because she received such services when she attended middle

school in the school district where she resided.  As noted in the Watchung Hills case, if the Court

-8-

found otherwise, it would be placing students who transition from one designated school district to another when advancing from middle school to high school in an undesirable position.  J.B. v. Watchung Hills Reg. Sch. Dist. Bd. of Educ., No. 05-4722, 2006 U.S. Dist. LEXIS 250, at *20 (D.N.J. Jan. 5, 2006).  For example, students who are placed in an outside placement for middle school as

> the only means of offering the child a meaningful FAPE . . . would have to be removed from the current placement, re-enrolled in the new designated high-school district, and receive services from that new district for some minium period of time in order to maintain eligibility to seek reimbursement for an appropriate outside placement – regardless of the new district's ability to provide an appropriate FAPE for the child.

Id. at *20-21.  Accordingly, the Court grants summary judgment to Plaintiff on this issue.

> 2.       N.J. Admin. Code § 6A:14-2.10(c)

Although the ALJ based his decision primarily on the legal issue of statutory interpretation, he also went on to find that the parents forfeited their right to any equitable remedy to which they might have been entitled because they failed to meaningfully engage in the IEP process.  See N.J. Admin. Code § 6A:14-2.10(c) (allowing an ALJ to deny or reduce reimbursement for the costs of a unilateral placement based on the parents' unreasonable behavior).  Under the applicable standard of review, the Court must make its own findings and give due weight to the findings of the ALJ.  Shore Reg'l, 381 F.3d at 198-99.

Based on the record submitted by the parties, the Court concludes that the preponderance of the evidence supports the ALJ's finding on this issue.  Here, the record shows that the parents were unwilling to give Defendant a realistic opportunity to provide B.Y. with a FAPE as they had already made up their minds to send B.Y. to a private placement.  For example, the parents had

already enrolled their child at the Kildonan School before the final IEP meeting was held.  (Pl.'s

Br. in Reply, Ex. C.)  Also, the parents failed to provide timely information about the services

offered by the Craig School to assist with the development of B.Y.'s IEP.  (Barger Certification,

Exs. I, J, & K.)  The parents stopped participating in the IEP process even though B.Y.'s IEP was

still being developed.  (Barger Certification, Exs. J & M.)  Further, the parents did not file their

due process petition until after B.Y. had started attending the Kildonan School.  These actions

show that the parents were determined to place their child in private school and did not wish to

make the necessary effort to complete the IEP process.  As a result, the Court will uphold the

ALJ's determination that the parents forfeited their right to reimbursement, and summary

judgment will be granted to Defendant on this issue.  See Greenland Sch. Dist. v. Amy N., 358

F.3d 150, 160 (1st Cir. 2004) (noting that reimbursement may be denied or reduced if the parents

do not give the school district notice of their intent to remove their child from public school);

Schoenfeld v. Parkway Sch. Dist., 138 F.3d 379, 382 (8th Cir. 1998) (affirming district court

ruling that parents' failure to seek an IEP before placing their child in private school precludes

reimbursement under the IDEA); Cranford Bd. of Educ., 702 F. Supp. at 1166 ("Conduct that

disregards the participatory process cannot be ignored or condoned.").

IV.     Conclusion

        For the foregoing reasons, both of the parties' cross-motions for summary judgment are

granted in part and denied in part.  An appropriate order will be entered.


                                        s/ Anne E. Thompson
                                        ANNE E. THOMPSON, U.S.D.J.

Dated: August 10, 2006